IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DARYL JON GOPPERT,<br>    Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL, COMMISSIONER OF<br>SOCIAL SECURITY ADMINISTRATION,<br>    Defendant. | Civil Action No. 3:19-cv-1019<br>Judge Richardson / Frensley |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was disabled once he reached an advanced age on May 10, 2012, which granted Plaintiff supplemental security income ("SSI"), but denied Plaintiff disability insurance benefits ("DIB") because the Plaintiff was not disabled within the meaning of the Social Security Act ("the Act"), as amended, at any time through December 31, 2008, the date last insured. The case is currently pending on Plaintiff's Motion for Judgment Based on the Administrative Record. Docket No. 22. Plaintiff has filed an accompanying Memorandum. Docket No. 22-1. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 23. Plaintiff has filed a Reply. Docket No. 24.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment Based on the Administrative Record be **DENIED**, and that the decision of the Commissioner be **AFFIRMED**.

### I.     INTRODUCTION

Plaintiff filed his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") on September 5, 2013, alleging that he had been disabled since August

1, 2008, due to panic attacks, memory loss, depression, PTSD, anxiety, and sleep problems. Docket No. 16, Attachment ("TR"), TR 181, 174, 199. Plaintiff's applications were denied both initially (TR 70, 71) and upon reconsideration (TR 106, 107). After the denial of his applications for benefits, Plaintiff subsequently requested (TR 7) and received (TR 31) a hearing. Plaintiff's hearing was conducted on May 27, 2015, by Administrative Law Judge ("ALJ") Angele Pietrangelo. TR. 31. Plaintiff and vocational expert ("VE"), Chelsea Brown, appeared and testified. *Id.*

On August 14, 2015, the ALJ issued a decision unfavorable to Plaintiff, finding that the Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 13. On January 23, 2018, Magistrate Judge Brown issued a Report and Recommendation urging the ALJ's decision be remanded under sentence four of 42 U. S. C § 405(g). Case No. 3:16-cv-02739, Docket No. 18. On March 1, 2018, Chief District Judge Crenshaw issued an order remanding the case to the Commissioner. Case No. 3:16-cv-02739, Docket No. 19. Plaintiff subsequently received a new hearing. TR 414. Plaintiff's second hearing was conducted on May 15, 2019, by ALJ Angele Pietrangelo. *Id.* Plaintiff, vocational expert, Bob Hammond, and Plaintiff's wife, Rebecca Goppert, appeared and testified. *Id.*

On August 6, 2019, the ALJ issued a partially favorable decision to Plaintiff, finding that Plaintiff was disabled within the meaning of the Social Security Act and Regulations once he reached an advanced age on May 10, 2012. TR 406. Specifically, the ALJ made the following findings of fact:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.
>
> 2. The claimant has not engaged in substantial gainful activity since the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. Since the alleged onset date of disability, August 1, 2008, the claimant has had the following severe impairments: degenerative disc disease; left wrist tenosynovitis; obesity; anxiety disorder; posttraumatic stress disorder; and major depressive disorder (20 CFR §§ 404.1520(c) and 416.920(c)).

4. Since August 1, 2008, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that since August 1, 2008, the claimant has the residual functional capacity to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b) that is limited to lifting and carrying twenty pounds occasionally and ten pounds frequently; sitting for six hours in an eight- hour workday; standing and/or walking for six hours in an eight-hour workday; occasional performing of all postural activities, i.e., climbing, balancing, stooping, kneeling, crouching, and crawling; performing only simple and detailed tasks; maintaining concentration, persistence, and pace for two hours at a time for those tasks only; frequently interacting with the general public, coworkers, and supervisors; and adapting to routine workplace changes.

6. Since August 1, 2008, the claimant has been unable to perform any past relevant work (20 CFR §§ 404.1565 and 416.965).

7. Prior to the established disability onset date, the claimant was an individual closely approaching advanced age. On May 10, 2012, the claimant's age category changed to an individual of advanced age (20 CFR §§ 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (CFR §§ 404.1564 and 416.964).

9. Prior to May 10, 2012, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills. Beginning on May 10, 2012, the claimant has not been able to transfer job skills to other occupations (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Prior to May 10, 2012, the date the claimant's age category

3

> changed, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR §§ 404.1569, 404.1569a [sic], 416.969, and 416.969a [sic]).
>
> 11. Beginning on May 10, 2012, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant could perform (20 CFR §§ 404.1560(c), 404.1566, 416.960(c), and 416.966).
>
> 12. The claimant was not disabled prior to May 10, 2012 but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)).
>
> 13. The claimant was not under a disability within the meaning of the Social Security Act at any time through December 31, 2008, the date last insured (20 CFR 404.315(a) and 404.320(b)).

TR 397-98; 404-06

On October 13, 2015, Plaintiff timely filed a request for review of the hearing decision. TR 605. On August 22, 2016, the Appeals Council issued a letter declining to review the case (TR 517), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the

4

Case 3:19-cv-01019   Document 25   Filed 02/05/21   Page 4 of 19 PageID #: 1267

administrative hearing process. *Jones v. Sec'y of Health & Human Servs.*, 945 F. 2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine: (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F. 2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F. 3d 388, 389 (6th Cir. 1999), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell V. Comm'r of Soc. Sec.*, 105 F. 3d 244, 245 (6th Cir. 1996), *citing Consol. Edison Co. v. NL.R.B.*, 305 U.S. 197, 229 (1938). The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F. 2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F. 3d at 389, *citing Key v. Callahan*, 109 F. 3d 270, 273 (6th Cir. 1997). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F. 2d 517, 519 (6th Cir. 1985), *citing Allen v. Califano*, 613 F. 2d 139, 145 (6th Cir. 1980). In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnoses and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F. 2d 361, 374 (6th Cir. 1965).

B.   **Proceedings at the Administrative Level**

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(l)(A). "Substantial gainful activity" not only includes previous work performed by the claimant, but also, considering claimant's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which the claimant lives, or whether a specific job vacancy exists, or whether the claimant would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process summarized as follows:

(1)   If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

(2)   If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

(3)   If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments or its equivalent.[1] If a listing is met or equaled, benefits are owing without further inquiry.

(4)   If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a prima facie case of disability.

(5)   The burden then shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her

---

[1] The Listing of Impairments is found at 20 CFR § 404, Subpt. P, App. 1.

age, experience, education, and residual functional capacity.

*See, e.g.*, 20 CFR §§ 404.1520, 416.920. *See also Moon v. Sullivan*, 923 F. 2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. *Moon*, 923 F. 2d at 1181; 20 CFR § 404, Subpt. P, App. 2, Rule 200.00(e)(l), (2). *See also Damron v. Sec'y of Health & Human Servs.*, 778 F. 2d 279, 281-82 (6th Cir. 1985). Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F. 2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement of Errors

Plaintiff contends that (1) the ALJ did not give his treating source proper weight because the ALJ favored the consultative examination of E. Ling Cheah, Psy. D, along with other evaluations over Plaintiff's prior Centerstone records dating from 2004 to 2008; (2) the ALJ

should have found Plaintiff disabled under Mental Listing 12.06 "Anxiety and Obsessive Compulsive Disorders;" and (3) the ALJ failed to consider Plaintiff's mental impairments with his physical impairments for their combined effect. Docket Nos. 22; 22-1. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F. 2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Sec'y of Health & Human Servs.*, 17 F. 3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala,* 25 F. 3d 316, 318 (6th Cir. 1994).

### 1. Weight Accorded to Opinion of Plaintiff's Treating Source

Plaintiff avers that the ALJ favored a non-treating physician, Dr. Cheah, who examined Plaintiff in 2013, over the intake assessments performed at Centerstone from 2004 to December of 2008. Docket No. 22-1, p. 9. Plaintiff argues that "[n]on-treating sources should not be considered controlling over treating sources unless certain good reasons exist." *Id.* Additionally, Plaintiff posits that Dr. Cheah's consultative exam and other examinations during 2016 to 2018

8

should not be determinative upon Plaintiff's condition between 2004 to 2008, when Plaintiff argues he had severe mental impairments. *Id.* at 10.

Defendant responds that the Plaintiff fails to cite "to a medical opinion from a treating source that ALJ ignored or improperly evaluated." Docket No. 23, p. 6. Defendant contends that the ALJ properly evaluated Dr. Cheah's opinion and that the "ALJ cannot be faulted for information that is simply not present from so many years ago" in answer to Plaintiff's argument that the ALJ failed to consider evidence of impairments prior to December 31, 2008. *Id.* at p. 7.

Plaintiff replies that the ALJ may have referenced the Centerstone treatment records, but the ALJ failed to use these treatment records dating from 2004 to 2008 in the ALJ's decision and instead relied upon later examinations to determine Plaintiff's level of severity. Docket No. 24, p. 1.

On January 18, 2017, the agency published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844. See also 82 Fed. Reg. 15132 (March 27, 2017) (amending and correcting the final rules published at 82 Fed. Reg. 5844). These final rules revised the policies for claims filed on or after March 27, 2017 and set forth the rules for evaluating opinion evidence (both medical and nonmedical). 20 C.F.R. §§ 404.1527, 416.927. See "Revisions to Rule Regarding the Evaluation of Medical Evidence," available at https://www.ssa.gov/disability/professionals/bluebook/revisions -- rules.html. Plaintiff filed his application prior to March 27, 2017. TR 174; 181. As such, Plaintiff's case is governed by the rules that were in effect at the time of the ALJ's decision. See 20 C.F.R. § 404.614 (generally, an application for benefits is deemed filed on the day it is received by an SSA employee). The regulations that were in effect at that time stated as follows:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under

paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.

(1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.

(2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion....

(3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion....

(4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

20 CFR § 416.927(c) (emphasis added). *See also* 20 CFR § 404.1527(c).

The ALJ must articulate the reasons underlying her decision to give a medical opinion a specific amount of weight.[2] *See, e.g.*, 20 CFR § 404.1527(d); *Allen v. Comm'r of Soc. Sec.*, 561

---

[2] There are circumstances when an ALJ's failure to articulate good reasons for the weight accorded to medical opinions may constitute harmless error: (1) if a treating source opinion is so patently deficient that the ALJ could not possibly credit it; (2) if the ALJ adopts the opinion or makes findings consistent with the opinion; and/or (3) if the ALJ has complied with the goal of 20 CFR § 1527(d), by analyzing the physician's contradictory opinions or by analyzing other

F. 3d 646 (6th Cir. 2009); *Wilson v. Comm 'r of Soc. Sec.*, 378 F. 3d 541, 544 (6th Cir. 2004). The reasons must be supported by the evidence and must be sufficiently specific so as to make clear to any subsequent reviewers the weight the ALJ gave to the treating source medical opinion and the reasons for that weight. SSR 96-2p.

The Sixth Circuit has held that, "[p]rovided that they are based on sufficient medical data, the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference." *Howard v. Comm'r of Soc. Sec.*, 276 F. 3d 235, 240 (6th Cir. 2002), *quoting Harris v. Heckler*, 756 F. 2d 431, 435 (6th Cir. 1985). If the ALJ rejects the opinion of a treating source, however, the ALJ is required to articulate some basis for rejecting the opinion. *Shelman v. Heckler*, 821 F. 2d 316,321 (6th Cir. 1987). The Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 CFR § 404.1502.

The ALJ in the instant action discussed the medical opinion evidence as follows:

Centerstone treatment records, 2004-2008:

> The claimant has a history of mental health treatment at Centerstone for panic disorder without agoraphobia, generalized anxiety disorder, and alcohol dependence, but treatment was terminated in June 2004, May 2006, December 2006, May 2007, and December 2008 due to lapses in services. Exhibits 7F-9F and 14F. There is no evidence of further treatment at Centerstone until February 13, 2016.

TR 400.

---

opinions of record. *See, e.g., Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010); *Nelson v. Comm'r of Soc. Sec.,* 195 F. App'x 462, 470-72 (6th Cir. 2006); *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456,464 (6th Cir. 2006).

11

Dr. E-Ling Cheah's Evaluation, 2013:

> During the period in question, the claimant underwent a psychological consultative evaluation with Dr. E-Ling Cheah who diagnosed him with anxiety disorder with mixed anxiety and depressive symptoms. She also diagnosed him with a history of substance abuse based on a remote history of substance use from several years prior. The claimant had an unremarkable mental status examination. He completed recall and digit span tasks, demonstrated normal thinking, and showed a good use of basic vocabulary and a good capacity for abstract thinking and understanding. He also could follow written and spoken instructions and complete basic math. Based on her overall evaluation, Dr. Cheah opined that the claimant had no limitations in his long-term and remote memory; mild limitations in his short-term memory, social relating, and ability to sustain concentration; and moderate limitations in his ability to adapt to change. She also assessed a Global Assessment of Functioning, or GAF, score of fifty-six to sixty-one. Exhibit 3F. GAF scores are subjective ratings of the social, occupational, and psychological functioning of adults and children. A GAF score of fifty-six to sixty-one suggests moderate symptoms or moderate difficultly in social, occupational, or school functioning.
>
> Dr. Cheah's opinion at Exhibit 3F is given less weight as she opined moderate limitations only in the claimant's ability to adapt to change. Her medical opinion is well-supported by her unremarkable evaluation findings but is not consistent with the claimant's reported symptoms of anger, panic attacks, isolation, and low motivation. However, as discussed above, the claimant's symptoms are improved with medication. This, along with his unremarkable mental status examinations and reported activities, support the limitations reflected in the above residual functional capacity. Dr. Cheah's GAF score is given limited weight inasmuch as it reflects moderate limitations as this is not inconsistent with the evidence as a whole.

TR 401-03.

Plaintiff claims that Centerstone doctors treated Plaintiff for an extensive period of time, specifically, from 2004 to 2008, where Plaintiff argues that the Centerstone treatment records illustrate Plaintiff's alignments meet or equal the Mental Listing 12.06 in 20 C.F.R. Part 404, Subpart P, Appendix 1. The period of time that Centerstone treated Plaintiff for his anxiety and other mental impairments would justify the ALJ's according greater weight to Centerstone treatment records than to other opinions, as long as those records were supported by medically acceptable clinical and laboratory diagnostic techniques, and consistent with the evidence of

record. As can be seen, however, Centerstone treatment records from 2004 to 2008 contradict other substantial evidence in the record as Plaintiff showed improvements with medication and had unremarkable examinations in the following years. TR 299; 302; 330; 332; 336; 941-42; 947. Additionally, the relevant period of determining disability for the Plaintiff is a narrow one lasting from August 1, 2008, the alleged onset date of disability, to December 31, 2008, the date last insured. See TR 395. The only documentation during this period is the termination report dated December 31, 2008, which shows diagnoses of generalized anxiety disorder and alcohol dependence, a GAF of 42, and a note stating, "Ct [Plaintiff] was last seen in 06/2007. Ct self--reported he was improving. Current progress unknown." TR 706. Other than the termination report, no other treatment records are dated during the August 2008 to December 2008 period.

As the Regulations state, the ALJ is not required to give controlling weight to a treating physician's evaluation when that evaluation is inconsistent with other substantial evidence in the record. See 20 CFR § 416.927(d)(2); 20 CFR § 404.1527(d)(2). Instead, when there is contradictory evidence, the treating physician's opinion is weighed against the contradictory evidence under the criteria listed above. *Id*. When the opinions are inconsistent with each other, the final decision regarding the weight to be given to the differing opinions lies with the Commissioner. 20 CFR § 416.927(e)(2).

Because the ALJ found that the Centerstone treatment records were inconsistent with other substantial evidence in the record and there are no treatment records during the relevant time period for determining Plaintiff's disability, the Regulations do not mandate that the ALJ accord controlling weight to the Centerstone intake assessments from 2004 to 2008. Accordingly, Plaintiff's argument fails.

### 2. Meeting or Equaling a Listing

Plaintiff contends that the ALJ erred in finding that the Plaintiff did not meet or medically equal the anxiety and PTSD Mental Listing 12.06 in 20 C.F.R. Part 404, Subpart P, Appendix 1, and that the ALJ further erred in not finding Plaintiff disabled starting on his alleged onset date, August 1, 2008. Docket No. 22-1, p. 11-12. Specifically, Plaintiff argues that he "met the following of [Section] A: 2. memory impairment 5. disturbance in mood (major depression) 6. emotional lability (temper outbursts or crying)" and that he met Section B requirements because "he suffered a marked restriction of daily living with marked difficulties in maintain [sic] social functioning." *Id.* Additionally, Plaintiff contends that the ALJ failed to consider Centerstone records dating from 2004 to December 31, 2008 in the ALJ's determination that Plaintiff's impairments did not meet or equal any Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, including Listing 12.06. *Id.* at 5; *citing* TR 400; 664-67; 679-81; 693-94.

Defendant responds that the ALJ correctly found that the Plaintiff had no more than moderate level limitations during the entire relevant period and that Plaintiff did not have "an impairment or combination of impairments listed in or medically equal to one contained in 20 C.F.R. Part 404, Subpart P, Appendix l." Docket No. 23, p. 10; TR 397-98.

Plaintiff replies that Plaintiff's mental impairments have been consistent from 2005 to, at least, 2008. Docket No. 24, p. 2. Plaintiff argues that the consistency, longevity, and severity of Plaintiff's mental impairments bolsters Plaintiff's claim that he meets the Mental Listing 12.06 in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 4. Additionally, Plaintiff cites the intake record dated May 9, 2007 as evidence of Plaintiff's impairments meeting Mental Listing 12.06 in 20 Part 404, Subpart P, Appendix 1. *Id.*; TR 786-87.

With regard to Listing 12.06, "Anxiety and Obsessive-Compulsive Disorders," the Code

of Federal Regulations states:

> 12.06 Anxiety and obsessive-compulsive disorders (see 12.00B5), satisfied by A and B, or A and C:
>
> A. Medical documentation of the requirements of paragraph 1, 2, or 3:
>
> 1. Anxiety disorder, characterized by three or more of the following: a) restlessness; b) easily fatigued; c) difficulty concentrating; d) irritability; e) muscle tension; or f) sleep disturbance
>
> 2. Panic disorder or agoraphobia, characterized by one or both: panic attacks followed by a persistent concern or worry about additional panic attacks or their consequence; or b) disproportionate fear or anxiety about at least two different situations (for example, using public transportation, being in a crowd, being in a line, being outside of your home, being in open spaces).
>
> 3. Obsessive-compulsive disorder, characterized by one or both: a) involuntary, time-consuming preoccupation with intrusive, unwanted thoughts; or b) repetitive behaviors aimed at reducing anxiety
>
> AND
>
> B. Extreme limitation of one, or marked limitation of two, of the following areas of mental function (see 12.00F):
>
> 1. Understand, remember, or apply information (see 12.00E1).
>
> 2. Interact with others (see 12.00E2)
>
> 3. Concentrate, persist, or maintain pace (see 12.000E3).
>
> 4. Adapt or manage oneself (see 12.00E4).
>
> OR
>
> C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
>
> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and

> 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

20 CFR § 404, Subpt. P, App. 1, Listing 12.06.

As can be seen above, the Regulations explicitly state that Plaintiff would need to establish an impairment in Section A and then either meet the criteria in Sections B or C to allow the ALJ to find in his favor on this step of the analysis.

The ALJ determined that Plaintiff "did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." TR 397. To find this, the ALJ considered Plaintiff's physical impairments, including Plaintiff's obesity, and found no impairment or combination of impairments that met or equaled the listed impairments. *Id.* The ALJ did find that the Plaintiff "has moderate limitations in understanding, remembering, or applying information; moderate limitations in interacting with others; moderate limitations in concentrating, persisting, or maintaining pace; and moderate limitations in adapting or managing himself." TR 398. As for Section C, the ALJ determined the Plaintiff did not satisfy Section C criteria because "there is no evidence of marginal adjustment, i.e., a minimal capacity to adapt to changes in one's environment or to demands that are not already part of one's daily life." *Id.* By finding that the Plaintiff met neither Section B nor C, the ALJ determined that Plaintiff's impairments did not meet or equal a Listing in 20 CFR Part 404, Subpt. P, Appendix 1, including Listing 12.06. TR. 397-98.

When coming to this decision, the ALJ considered the medical evidence regarding Plaintiff's anxiety and PTSD severity level and determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed

16

Case 3:19-cv-01019   Document 25   Filed 02/05/21   Page 16 of 19 PageID #: 1279

impairments in 20 C.F.R. 404, Subpart P, Appendix 1. TR 398. Plaintiff's argument that the ALJ failed to consider the record as a whole when determining that Plaintiff's impairments neither met nor medically equaled a listing is unavailing. Even though the ALJ put more weight on Plaintiff's more recent evaluations over his Centerstone treatment records dating from 2004 to 2008, the ALJ reasoned that the more recent evaluations show not only that Plaintiff's impairments improve with medication, but that the Plaintiff had numerous unremarkable mental examinations, which the ALJ explains supports the ALJ's determination that Plaintiff does not meet or medically equal a Listing in 20 CFR Part 404, Subpart P, Appendix 1.

Because the ALJ properly evaluated the evidence of record and substantial evidence supports the ALJ's determination that Plaintiff does not meet or medically equal a listing, the ALJ's decision must stand.

### 3. Evaluation of the Combined Effect of All Impairments

Plaintiff contends that the ALJ failed to properly evaluate the combined effect of his impairments. Docket No. 22-1, p. 12. Specifically, Plaintiff argues that the ALJ failed to give proper weight to Plaintiff's mental impairments as a combined effect when determining Plaintiff's severity level. *Id*.

Defendant responds that the ALJ properly considered the impairments in combination because the ALJ reviewed the record and stated that all impairments were considered in combination. Docket No. 23, p. 11. Defendant argues this is enough for the ALJ to meet the ALJ's burden for the decision. *Id.* Also, Defendant avers that the RFC reflected all the physical and mental conditions from which the Plaintiff suffers. *Id*.

Plaintiff replies that the ALJ could not have considered Plaintiff's mental impairments because the ALJ "passes over the mental impairments which have existed prior to the exhaustion

17

Case 3:19-cv-01019   Document 25   Filed 02/05/21   Page 17 of 19 PageID #: 1280

of benefits in 2008." Docket No. 24, p. 5.

Plaintiff correctly states that the ALJ must consider the combined effect of Plaintiff's impairments without regard to whether, if considered separately, any one impairment would be of sufficient severity for disability. Docket No. 22-1, p. 12; see 42 U.S.C. § 423(d)(2)(B). The ALJ, after evaluating all of the medical, vocational, and testimonial evidence, determined that Plaintiff did not have an impairment or combination of impairments that met or equaled a Listing. TR 397-98. In making this determination, the ALJ specifically noted, inter alia, that the Plaintiff's mental impairments "considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.06, and 12.15." TR 397. The rationale in the ALJ's decision specifically addresses the medical evidence, as well as Plaintiff's testimony and subjective claims of "problems with remembering, completing tasks, concentrating, understanding, following instructions, getting along with others, and handling stress and changes in routine," clearly indicating that these impairments were considered. TR 398, citing TR 222-28. The ALJ explained that the ALJ compared these subjective claims with other evidence such as:

> However, he reported caring for his pets, managing his hygiene, and grooming without any problems, preparing simple meals, housecleaning, and laundering. At a psychological consultative evaluation, he reported managing his medications with little or no difficulty, preparing elaborate meals, washing dishes, vacuuming, sweeping, doing laundry, and occasionally mowing the lawn.
>
> . . .
>
> He had an unremarkable evaluation, and his treatment records also reflect unremarkable mental status examinations. Exhibits 3F, 22F, 24F, 25F, and 30F. He reported symptoms of anger, isolation, panic attacks, and low motivation. Exhibits 17F, 18F, 20F, 21F, and 23F. However, he had improvement in his symptoms with medication. Exhibits SF, 22F, 24F, 25F, and 30F.

TR 398.

There is no evidence to support Plaintiff's claims that the ALJ overlooked his mental impairments entirely. To the contrary, it is clear from the ALJ's articulated rationale that the ALJ

18

considered the record as a whole in evaluating the combined effect of Plaintiff's impairments. Moreover, the ALJ supports the determination that Plaintiff did not have an impairment or combination of impairments that met or equaled a Listing with Plaintiff's reported "unremarkable mental status examinations" and his consistent intake of mood stabilizing medication. TR 398, citing TR 299; 302; 330; 332; 336; 941-42; 947.

There is substantial evidence in the record to support the ALJ's determination that the Plaintiff did not have an impairment or combination of impairments that met or equaled a Listing, and that the ALJ considered Plaintiff's mental and physical impairments together; therefore, the ALJ's decision must stand.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment Based on the Administrative Record (Docket No. 22) be **DENIED**, and that the decision of the Commissioner be **AFFIRMED**.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); Fed. R. Civ. P. 72.

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**